The final matter that we will call for argument this morning is Gordon v. Allstate Property & Casualty Insurance Company. Mr. Goulding. Good morning, your honor. May it please the court. I am Alan Goulding. I'm here on behalf of Allstate Insurance Company. I'd like to reserve three minutes for rebuttal. Granted. Thank you. This is a, or should have been, a fairly conventional breach of contract action, but it was subverted in sidetracked when the trial court decided to permit Mrs. Gordon to testify about her belief of what her policy, her homeowner's policy should have provided, what type of coverage it should have provided. The consequence of that is that the jury was authorized to award coverage even if it didn't exist, based solely upon what she thought she should have gotten. Well, the jury was asked, though, and instructed accordingly, asked by her and instructed by the court, to examine the claim per the language of the insurance policy, right? Yes. And had an opportunity to make a determination as to whether or not the claim made squared with the coverage that was offered. So there was not at the outset an effort by the plaintiff to somehow obscure matters by making this an inquiry into reasonable expectations, was there? I don't, I don't agree with the latter part. There was a single question that the jury... I'm asking, how was the claim or claims set out in the complaint? Oh, I'm sorry. Yes. In the complaint, there was a single count, and it was purely a breach of contract action. There were no claims that the policy that Mrs. Gordon received was not the one that she asked for, or that it was somehow misleading, or that she was deceived. She did not allege that it had been altered or changed in the five years that she owned the policy. She didn't allege in her complaint that there was any type of ambiguity, or that she was confused, or that there was any part of it that was vague. So it was purely, I am entitled to coverage because my loss is covered by the policy, and all states' denial was based on their belief that there was some type of lack of maintenance. And so it was just purely a breach of contract action. There were no allegations, none of the, what I would call, prerequisites to get to an insurer talking about, well, I thought I had this, or I should get this. That was absent in any of the pleadings. It was not part of any of the disclosures by the parties. There was no discovery on the issue of what the insurance expectations were. And that issue was first presented to the court, to the trial judge, at the pretrial conference. Isn't that harmless, though, given that the jury's decision was apparently based on an event that was covered by the policy? I would say it's not harmless, Your Honor, because it is a secondary theory of liability. I understood that there was testimony that the damage to the plaintiff's property was caused by a windstorm. There was. And windstorm is a covered event under the policy. It could be, yes. It could be. Well, wasn't the jury asked if the plaintiff suffered a loss by an event that was covered by the policy? They said yes. The jury posed a single question, which allowed them to decide whether or not there was coverage under the policy, which would have permitted that. That's pretty much what I said, but if you want to rephrase it in the way that it was asked of the jury, I'd ask you to do that. No, what I'm saying is that because there was only a single question posed to the jury as to whether or not there's coverage under the policy, if the jury found that there was not coverage under the policy itself, that the exclusions applied, but they believed that Mrs. Gordon had asked for something else or wanted something else or expected something else, the only way they could award her coverage and the only way they could concede to her expectations was to answer the first question yes. So there wasn't a series of questions that the jury was posed where they could say we believe that the exclusion applied. In the case itself, there was only one question put to the jury? That's correct. On the issue of whether or not there was coverage. There were other questions on other issues? I think there was a single question on whether or not there's coverage and then the next question was what's the amount of the damages. I mean, doesn't the answer to that question pretty much resolve the case? No, I would suggest that it does not. How do we tell the jury now if we have to write an opinion? How do we tell the jury that you got it wrong because your answer yes to whether there was a covered event and the policy was wrong? I don't think we tell the jury they got it wrong. I think what we're arguing is that the trial judge erred in permitting the testimony from Mrs. Gordon about her expectations. The question to the jury was okay, but the testimony that preceded the jury's verdict was wrong. Allowing Mrs. Gordon to testify about her expectations was the error. You've appealed denial of remotion and limiting. You've appealed the instruction that was given relative to reasonable expectations. Correct. But I go back to how Judge Fuentes began the question a few moments ago and I think it was essentially asking how your client was harmed. I'm trying to figure out in the context of harmless error how your client would have been harmed. Beyond what the jury had an opportunity to do in making a determination as to what coverage was and whether this claim fell within the coverage, the plaintiff brought a lawsuit. Of course these were her expectations. She wouldn't have filed a lawsuit if they weren't her expectations that this claim was covered. How were you harmed? Your Honor, simply because she thought it was covered didn't mean that it was covered. That's not the issue, of course. That issue was before the jury and they made a determination that was contrary to your client's wishes, but it does not speak to how this would have been prejudicial in any way. My contention is that if the jury reviewed the policy and found that the event was excluded from coverage because there was not a windstorm, that it was the result of a failure to maintain the property, which was also its position. But there was evidence that there had been a windstorm. There were several witnesses who testified that there was damage and the damage was caused by a windstorm. There was a single witness who said that. There was an expert who offered an opinion that it was a factor. Okay, so that's a weight of the evidence issue. I don't see how that factors into the issue, Your Honor. If I can answer your question. If the jury concluded that this was an excluded event because it was not the result of a windstorm, but it was the result of a failure to maintain, they still were able to go ahead and award coverage to Mrs. Gordon based on her expectations of what the policy should have included. So they were permitted to go beyond the language of the policy to award coverage to her based on her expectations solely. And the way they could do that was by answering the only question that was posed to them by saying yes. All that may be possible, but if you come at it from the other side, isn't there at least substantial evidence in the record from which the jury could have reasonably found that windstorm was in fact the cause of the damage to Mrs. Gordon's property? Our contention is that the evidence did not prove that it was a windstorm. All right, but if there is, if we disagree with that and we think there's substantial evidence from which the jury could reasonably have found windstorm, a covered peril caused the damage, doesn't it follow that all of your arguments are harmless error at best? I would contend not because they still were permitted to hear testimony about the expectations of the insured. And we don't know whether that was the basis for their decision. We don't know. Hold on. I'm sorry. If, and I understand you disagree with it, but if there was substantial evidence to support the finding that windstorm was the cause, isn't it highly probable that the outcome was going to be the same regardless of whether this jury heard about reasonable expectations or not? I don't, I can't, I don't know whether it's highly probable or not. Certainly the jury could have, if there was evidence that it was a windstorm, the jury could have concluded that it was a windstorm, yes. Mr. Gouley, the judge started to ask you, essentially, is it your case all about harmless error? And I'll repeat that question. You didn't raise anything about substantial evidence. You raised trial error issues, right? No, I think the last part of our argument is that there was not evidence to support the contention that it was wind that caused the loss, that there was not factual evidence to that. It was a theory that was advanced but not supported by fact. Well, that's not how you framed the issues in the brief, but I'll allow you that point. I'll address that if I may, and I'll try to be succinct with regard to that. The issue with regard to the cause of this loss came down to whether or not it was wind that caused the collapse or whether it was a lack of maintenance. And there were two experts that were offered, one by the plaintiff, one by the defendant. The plaintiff's expert said that he believed there was a series of freeze and fall cycles that caused damage to the wall and that that was the result of damage to a metal on the edge of the roof, a roof edge metal. But that had been going on for perhaps decades. So the jury was presented with two versions. The jury was presented with a version by the plaintiff that there were freeze and fall cycles that had been going on for decades. That's a maintenance issue. I thought the versions were one was deterioration, natural uncovered event, and one was a windstorm event that would be covered. Yes. Here's the basis of the plaintiff's expert's opinion, which is there is... I understand that, but I'm just saying there were two alternate theories presented to the jury. There were theories, yes, but there were no facts that support the plaintiff's theory. That's my argument. That's a matter for the jury. I'm just wondering if that's simply a matter for the jury on the basis of credibility. Did you move for a non-suit? Yes. Trial counsel did move. Okay. And obviously the... It was denied obviously. We wouldn't be here with me as the appellant. That's correct. I think you're referring to Mr. Rosen, the plaintiff's expert, correct? That's correct. And I'm trying to understand your view. He didn't maybe sort of come right out and say predominant cause was windstorm or sole cause was windstorm, but he clearly said that he thought that windstorm was more responsible for this damage than the freeze thaw, didn't he? He said wind was a factor. He said, I would attribute this more to a wind event than just due to the damage that occurred. Yes, but he also backs off of that later, and he says... But wasn't the jury entitled to... Wasn't there sufficient evidence there for them to find? I don't think there are facts to support that. It's a theory that he offers, but there isn't... They didn't present evidence that there was wind that would cause that type of damage. You have reserved time for rebuttal. I do. Thank you, Your Honor. All right, before I mispronounce your name, counsel, Mr... Your Honor, it took me two years. It's all right. Good morning. May I please report... I think at age two being able to pronounce your last name ain't bad. That's the point. Could you pronounce that again? I'm sorry? Pronounce your name again. Liberato Verderame. Verderame. Verderame. Once you get used to it, it's very easy. But thank you. Verderame. My co-counsel, Mr. Kirkpatrick, would like to address issues concerning the sufficiency of the evidence, and I will take my time and address issues concerning the reasonable expectations question. The question becomes, there's several issues that need to be addressed, and the first issue that we should talk about is whether it was appropriate for the jury to hear reasonable expectations testimony at all. And the issue that all state is bringing up is that, well, there wasn't testimony there to vary the terms of the policy. We submit that the testimony that the jury heard concerning reasonable expectations did not vary the terms of the policy, that the case was ultimately decided on sudden and accidental physical loss. Quite frankly, I was a little troubled by it because you can get a plaintiff to say just about anything, I expected this from the policy or I expected that from the policy. But it is Pennsylvania law, isn't it? That's right. It should, any time there's an issue, the issue, it became an issue when all state issued its denial and said you did not have a sudden and accidental loss. I'm sorry, your view is that Pennsylvania law requires the court to allow reasonable expectations testimony in every case, because in every case, of course, the plaintiff is there because they were denied. Well, I don't know that it becomes in every case, but if you read the, read so many of the, in my brief, I just focused on either Third Circuit or Eastern District and I really did not even look at it, because I think there's a difference in maybe the application. Judge Stark's point, I thought it was a good point, because if you have evidence that the loss occurred because of this event, specific evidence, and she apparently did, one storm, wouldn't other evidence such as I reasonably expect to be covered under the policy be prejudicial? Why do you need it when you already have evidence that the loss occurred because of this specific event? Why does the insurer now have to come forward and say I reasonably expect to be covered for things like this? Because it relies on their interpretation of the policy. They're going to rely on exclusion. First off, what was the protection she requested? I saw this case as one of two alternatives. The loss was either covered by a windstorm or it was caused by a deterioration, which is not a covered event. Is that fairly accurate? Well, yeah, but that's not the position that they took. It's their interpretation of that terminology, that their interpretation has been, and this is kind of the sufficiency of the evidence argument, but their interpretation has been it's got to be a sudden and accidental windstorm causing a loss, and that's not what the policy says. So now in terms of the reasonable expectations, she's going to testify about what it is, first off, what it is that she thought she was buying. Pennsylvania law says she has a right to expect something in return for her money. This is a matter of pure state law, or maybe in some instances impure state law. Let's assume that Pennsylvania is not a model of clarity on when reasonable expectations should be injected into a lawsuit of this kind. Isn't your position, ultimately, that right or wrong, there was no prejudice here? And if that's the case, isn't the safest thing for this court, as a federal court to do, is avoid weighing in on a matter of Pennsylvania law? Just say that right or wrong, what happened was harmless, and that's the end of it. Ultimately, that's our position, because, first off, the testimony that the jury did not hear was not what we had discussed, that her testimony had actually, we had intended to go further with her testimony in terms of the discussion with the agent and what she thought she was buying and what policy would have been appropriate for the 100-year-old house. We never got there. I tried several times to circle back and bring that testimony out, and then we were going to follow that testimony up with more from Jack Quigley, who is the adjuster, who would have explained the differences in the policies. We never got there. That's one aspect of the reasonable expectation. The second aspect is once she's outside and she's looking at her wall, the two walls that are still open to the air, and she says, well, the first call she made was to Allstate. I expect Allstate to cover me for this loss. It's a catastrophic loss, and contrary to Allstate's position, Mr. Rosen testified that it was catastrophic loss, sudden and accidental. No one argues whether or not the collapse of the wall was sudden. It came down all at once. She didn't do anything. It's accidental. Does she have a reasonable expectation that given that explanation, which was given to her by Jack Quigley, he read the policy, he said it's a windstorm. Jerry Voegli said very clearly the wind opened a hole and made it a catch funnel, drained all the water down. Mr. Voegli, about two minutes ago or so, I gave you one of the biggest softballs it would be possible to throw. I don't know why you didn't just take it. I'm heading there, Your Honor. So ultimately the jury heard the testimony, and they determined that that testimony was not dispositive, and the case was decided on the sudden and accidental physical loss. That's ultimately where the case is decided. So all the testimony that they heard really did not affect the outcome because the other testimony that was presented by five witnesses that testified to the storm and Mr. Volpe, Mr. Rosen, Mr. Quigley that said it's a sudden and physical collapse. And the jury question, again, focused them on the language of the policy, go back, look at the policy, what does the policy say, and make a determination based on the language of the policy. And her reasonable expectations did not affect the jury's discussions. You didn't circle back. You said you were going to circle back. It's whether or not it's harmless. This is the last time I'm going to ask a yes or no question to that. Well, the answer is yes. It was harmless, ultimately. Thank you. Okay. Thank you, Your Honor. Mr. Kirkpatrick. Good morning, Your Honors. You may please the court. My name is Sean Kirkpatrick with the Pennsylvania Office of Attorney General. I'm here on behalf of the Pennsylvania Housing Finance Agency. And I'd like to begin by clarifying, I believe, a confusion in the record. And this goes to what question the jury was actually asked. In page 729 of the verdict slip, Your Honor, on page 729 of the reproduced record, the verdict slip that was included in the appendix is not the actual verdict slip given to the jury. And I missed this, quite frankly, the first time, but the language is different. If you look at, it's also, that was also the language that Allstate cites on page 7 of the brief. But if you look at the actual language that was answered by the jury on 724, they were asked, do you find that plaintiffs, Ahsaki Gordon and the Pennsylvania Housing Finance Agency has proved by preponderance of the evidence that the collapse of the exterior wall of plaintiff Ahsaki Gordon's home in March 2015 was a sudden and accidental physical loss caused by a windstorm, as covered under her policy with defendant Allstate Property and Casualty Insurance. They were specifically asked, was this, yes. And we cite in our brief to document 56 in the record below, which is the actual document that was signed and filled out by the jury. The reason that that is important is because, as Judge Fuentes correctly points out, the jury was given two theories of loss. And they were asked specifically, did a windstorm knock this down? So the question for purposes of sufficiency of the evidence is, is there a minimum quantum of evidence to support that finding that a windstorm took this wall down? Did you understand Allstate as putting forward a sufficiency of the evidence question here in this appeal? Yes, Your Honor. We brief that. I believe perhaps maybe the confusion is that their standard of review for that question, they cite to a 12B6 standard of review instead of a Rule 50 or 59 sufficiency of the evidence. Obviously, a jury verdict has a lot more weight than a complaint. The question becomes, is there some basis for it? And there was two witnesses who testified, at minimum, there were two witnesses who testified that a windstorm caused this wall to come down. The first was Jay Rosen, who was the expert. And as Judge Stark pointed out, he said several times in the record, in his supplemental report, which was plaintiff's Exhibit 24, at 148 in the record, he said, quote, the failure can be directly attributed to the storm. On page 485 of the record, he was asked, so aside from the storm on March 10th, do you believe that the wall would have collapsed on that day? He answered, no, I do not. Now, he also, though, I suppose colorfully said the windstorm was the final nail in the coffin. Correct? Yes, Your Honor. And so on their argument that you did not, or that the plaintiffs didn't prove that the predominant cause was the windstorm, aren't they right that that's a problem for you? You wouldn't normally think of the final nail in the coffin as being the predominant cause. It would just be, you know, the last sort of minimal cause, I suppose. Well, no, Your Honor. That really goes to the jury's interpretation of the testimony and goes to the weight that they give it. Roseden testified to that, to a freeze-thaw cycle, but he also explained that that affects every single older home in the Pennsylvania region because we have cold winters. He testified in his supplemental report that although he discussed freeze-thaw, he made clear that the ultimate cause of this collapse was the windstorm. But he never says predominant cause, though. Absolutely, Your Honor. He is not a lawyer and he does not write insurance policies. He does not use the word predominant. But even if we put him aside, there is still the building contractor, Gerald Volpe, who is the only one who actually climbed up onto the roof to do emergency repair, looked at the damage, and he testified that the capping along the roof gave way, acted as a funnel, and directed the water from the storm behind the wall, which caused the wall to collapse. So even if we ignore Roseden, and I think it would be an error for this Court to do so, since all reasonable inferences must be in Ms. Gordon's favor, we have Mr. Volpe's testimony as well. You also have the testimony which counters the theory that it was a lack of maintenance by at least three witnesses, and we cite to this in our brief, three witnesses testifying that there was no mold, there was no water staining, there was no deterioration that they could find that would have caused this. So at the end of the day, to the question as to whether there is a minimum quantum of evidence to support the jury's very specific finding that a windstorm caused this wall to come down, which we all agree is covered by the policy, we think the answer is yes. In light of all this, was the testimony regarding the insurance reasonable expectation necessary? Ultimately, no. At the end of the day, Ms. Gordon testified in harmony with what the policy said. You don't think it prejudiced ultimately the jury's decision? No, Your Honor, especially given the District Court's clear instruction that Pennsylvania law says that the focal point is the insurance reasonable expectation, but that cannot trump clear and unambiguous language of the policy, and you are to look at the policy, and in fact, the jury, when they went back to deliberate, they asked for a copy of the policy. They took that direction very seriously. And again, the fact that they ultimately found that windstorm caused this damage, which we all agree is covered by the policy, negates any kind of error. If there is error, and we argue there isn't, but if there was, that is harmless. Thank you very much. Mr. Golding, we'll have you back on the bubble. Let me just start with a quick point. Is the verdict sheet question that Mr. Kirkpatrick read to us the correct one that went to the jury? He was reading from the instructions that when they brought the jury back in, he read from the transcript. So the verdict slip that I have is different than what was read, so I'm going to have to defer to what was in the transcript. But the verdict slip that I have is different. On a couple of points, first on the issue of whether it was harmless error to permit the erroneous, I would contend, testimony about Mrs. Gordon's expectations. I contend it is not harmless error because, as the Pennsylvania Supreme Court has said, if there's a real possibility that the error may have contributed to the verdict, it is not harmless. What is the error in the first instance if the testimony is consistent with Pennsylvania law? Allowing the insurer to testify, but I think my policy should provide this. It's Pennsylvania law. It's not Pennsylvania law if there isn't a predicate, which is that the policy is vague or ambiguous or that it was changed or altered. Mr. Kirkpatrick here found an ambiguity. He did. That was not an abuse of discretion, though, was it? I would contend that the finding of the ambiguity, as we briefed, where he looks at one part of the policy to look at what does sudden and accidental mean and then looks at a distinct and separate part of the policy and looks at the word occurrence and says these two terms differ and, therefore, they're ambiguous, is simply it was wrong. It was just error. Even if wrong, having made that wrong decision, he then had to make an evidentiary determination. He did. He made an evidentiary decision. But I find that there's an ambiguity in the policy when, in fact, the ambiguity isn't there. Did he abuse his discretion in letting her testify? He abused his discretion in finding that there was an ambiguity when one did not exist. And because of that error, he then permitted the testimony. Our contention is that was error. And it isn't harmless because it was permissible for the jury to award coverage based on Mrs. Gordon's expectations. Even if, and we would contend, even if there was evidence that it was not covered by the policy, they could still award her coverage because she thought she was getting that kind of coverage. And we contend, therefore, because there is a very real possibility, a reasonable possibility that that error led to the verdict, it isn't harmless. You can't just close the book on this and say we can walk away when that error is a real possibility for the outcome of the case. On the issue about my time is up. Thank you very much. Thank you very much. Counsel, we thank you for your assistance. We'll take the matter under advisement. And we'll ask the clerk to recess the proceedings. Please rise. This court stands adjourned until July 12th at 9.30 a.m.